

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00136-CR

_____

JIMMY LEON ETUE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2024F00144

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Cass County jury found Jimmy Leon Etue guilty of aggravated sexual assault of Jennifer Falk, a child,[1] a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (Supp.). After a punishment trial to the bench, the trial court sentenced Etue to life imprisonment, with a $10,000.00 fine. On appeal, Etue argues that the trial court erred by (1) trying him in absentia, (2) "excluding evidence that the complainant previously made a similar unprosecuted allegation of sexual abuse," and (3) sentencing him while his counsel was not present.[2]

We find that the trial court did not abuse its discretion in finding that Etue voluntarily absented himself after the first day of trial or by excluding evidence of Falk's allegation of sexual abuse against another man. We further find that Etue was not harmed by the trial court's decision to sentence him while his counsel was not present, since the trial court had previously assessed the same sentence in counsel's presence. As a result, we affirm the trial court's judgment.

I.      **Factual and Procedural Background**

Etue was present for pre-trial hearings, voir dire, and throughout the first day of his trial. After hearing Falk testify, Etue did not return to the courtroom. The record suggests that Falk's testimony informed this decision.

---

[1]To protect the child's identity, we use pseudonyms for the child and her family members. *See* TEX. R. APP. P. 9.10.

[2]In appellate cause numbers 06-25-00137-CR and 06-25-00138-CR, Etue appeals his convictions for indecency with a child by contact.

## A. Testimony From the First Day of Trial

At trial, Falk described Etue as "very vulgar" and "very abusive," and said that Etue would beat her with a wooden paddle as a young child until she would urinate and he once "choked [her] against a wall." Falk testified that she feared Etue and that his physical abuse morphed into sexual abuse when she became a teenager.

Falk testified that Etue showed her pornography while she was a young child and, one day, Etue turned on "*50 Shades of Gray,*" sat her on his lap, and began rubbing her chest. Falk further testified that, when she was twelve, Etue said "he was going to teach [her] how to be a woman." Falk said that Etue laid her on his bed, "pulled [her] pants down, and began fingering [her]." Falk testified that she was crying and asked Etue to stop, but that he ignored her and "began telling [her] how wet [she] was getting."

Falk, who was an adult by the time of trial, testified that her outcry was delayed because Etue "had instilled such fear in [her] saying if [she] ever talked about it, he would beat [her] black and blue till the cops came, and that no one would ever believe [her], and that things would get a lot worse." Falk said that Etue groped her breasts and slapped her bottom frequently and would also grab her vagina. Falk also testified that Etue massaged her breasts "on multiple occasions" and showed her sex toys.

Falk's grandmother testified that Falk moved in with her when she was sixteen, was "[d]efinitely scared" of Etue, and made a delayed outcry of sexual abuse when she became an adult.

3

### B. Etue Did Not Return After the First Day of Trial

After the first day of trial had concluded, Etue's wife called the sheriff's department to report her concern that Etue might attempt suicide. On the morning of the second day of trial, the Longview Police Department checked Etue's global positioning system (GPS) monitor to find his location and discovered him "unconscious in a car in the parking lot" of a Sam's Club. Etue was transported to a local hospital and, as a result, did not appear for the second day of trial. The trial court noted that Etue "had either a medical condition or some kind of drug reaction" and postponed the trial for a few hours pending an update on Etue's condition.

Around 10:00 a.m. on August 27, 2025, the trial court decided to continue the trial until the following morning. On August 28, Etue's hired counsel filed a motion for mistrial or, alternatively, a motion to continue the case. In his motion, he argued that there was no evidence that Etue "voluntarily absented himself from the trial" and that Etue was "in the hospital, foaming at the mouth and in a state of unconsciousness," which rendered him unable "to appreciate the proceedings, participate in his defense, and make life-altering decisions such as whether or not to testify." Etue's counsel also filed a motion for a competency examination. On the morning of August 28, the trial court heard Etue's counsel's motions.

Etue's counsel argued that Etue had a right to be present at trial. Etue's counsel noted that there was no information showing whether Etue had attempted suicide or whether he was in the hospital as a result of a medical condition. According to Etue's counsel, Etue was in the hospital, nonresponsive, with blood clots in his lungs. In response, the State argued that Etue's counsel had also filed a motion for a competency examination, which admitted that Etue had

4

attempted suicide and, as a result, had voluntarily absented himself. The State also called several witnesses for the purposes of the hearing to establish the suicide attempt.

### C. The State Presented Evidence of a Suicide Attempt

First, the State called Charenda Freeman, a communications and training administrator for the Longview Police Department (LPD). Through Freeman, the State introduced a 9-1-1 call from Etue's wife in the early morning hours of August 27, stating that Etue was missing, had taken his medications with him, had court in the morning, and could not be found.

Collin Gross, a police officer with the LPD, testified that he was on patrol when he saw Etue's truck in a parking lot. According to Gross, Etue was slumped over and unresponsive in his running truck. Max Richardson, a police officer with the LPD, also arrived at the scene. Both Gross and Richardson testified that Etue was either going through some type of medical emergency or had taken some drug. Gross clarified that he did not see any pill bottles or pill residue around Etue. An ambulance transported Etue to a local hospital, and shortly thereafter, Richardson was dispatched to the hospital to stay with Etue. According to Richardson, Etue's wife said that Etue had been "prescribed Xanax and Seroquel, and [she] believed that he [had] overdosed" on them.

Sabrina Sartor, an investigator with the Cass County Sheriff's Office, testified that hospital staff "were trying to determine what [Etue] had taken" to put him in the state he was in. Sartor testified that Etue had tried to commit suicide.

Sartor explained that she had obtained a search warrant for Etue's cell phone, which showed that "[h]e was telling family that he loved them, saying goodbye, things of that nature"

5

while he was in the Sam's parking lot, which Sartor said was consistent with a suicide attempt. Sartor also said that, in response to Etue's text messages, several family members called Etue, but he did not answer. Sartor testified that Etue's behavior and condition were consistent with an intentional overdose, not a medical emergency.

After hearing that evidence, the trial court found that Etue had attempted suicide. As a result, it denied Etue's counsel's motion for mistrial or continuance and found Etue voluntarily absent.

As for Etue's counsel's motion for a competency examination, the record shows that Etue's counsel never indicated that Etue might be incompetent before his suicide attempt. Pre-trial hearings included representations from Etue's counsel that Etue "performed perfectly on pretrial release," complying with all of its terms and conditions. During the pre-trial hearing, Etue's counsel announced that the defense was ready for trial and that there were no matters to bring to the trial court's attention. Counsel announced ready for voir dire and, after the jury was impaneled, counsel assured the court there was nothing to "take up" before trial. On the day of trial, Etue's counsel again announced ready in Etue's presence. Before the jury, Etue pled not guilty.

In denying Etue's counsel's request for a competency examination, the trial court referenced Etue's demeanor at trial, stating, "He was here in court. He was fully engaged in this trial. Yesterday, he was having a conversation -- or the day before he was having conversations with his counsel, [and] was paying attention to the witnesses."

6

The remainder of the trial in Etue's absence resulted in a finding of guilt and a sentence of life imprisonment.

## II.     The Trial Court Did Not Abuse its Discretion by Trying Etue in Absentia

In his first point of error, Etue argues that the trial court incorrectly concluded that he voluntarily absented himself after the first day of trial.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Smith v. State*, 494 S.W.3d 243, 251 (Tex. App.—Texarkana 2015, no pet.) (quoting *Illinois v. Allen*, 397 U.S. 337, 338 (1970)). Even so, "the Supreme Court has recognized that a defendant's conduct in voluntarily absenting himself after his trial has commenced with him in attendance amounts to a forfeiture of his Sixth Amendment right to be present during the time he is absent." *Id.* (quoting *Ashley v. State*, 404 S.W.3d 672, 680 (Tex. App.—El Paso, no pet.) (citing *Taylor v. United States*, 414 U.S. 17, 18–19 (1973) (per curiam); *Miller v. State*, 692 S.W.2d 88, 90–91 (Tex. Crim. App. 1985))). Accordingly, Article 33.03 of the Texas Code of Criminal Procedure requires the personal presence of a defendant in a felony trial unless the defendant "voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, [in which case] the trial may proceed to its conclusion." *Id.* (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 33.03).

"We review the trial court's decision that a defendant voluntarily absented himself from trial for an abuse of discretion." *Id.* at 253 (citing *Papakostas v. State*, 145 S.W.3d 723, 725 n.2 (Tex. App.–Corpus Christi–Edinburg 2004, no pet.)); *see Trotti v. State*, 692 S.W.3d 679, 683 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (citing *Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984)).

It is well established that "a defendant cannot avoid trial by intentionally disabling himself." *Smith*, 494 S.W.3d at 253 (quoting *Maines v. State*, 170 S.W.3d 149, 150 (Tex. App.– Eastland 2005, no pet)). For this reason, Texas courts, including this Court, "have held that a defendant voluntarily absents himself from trial when he attempts to commit suicide, is placed in a hospital, and, as a result, is not present in the courtroom." *Id.* at 254 (citing *Sanchez v. State*, 842 S.W.2d 732, 733 (Tex. App.—San Antonio 1992, pet. ref'd)); *see Trotti*, 692 S.W.3d at 686 ("A defendant may be considered voluntarily absent from trial when he is not in the courtroom because he has chosen to attempt suicide." (citing *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.))).

Here, the trial court heard ample evidence to support its decision that Etue had voluntarily absented himself by attempting to commit suicide, including the 9-1-1 call from Etue's wife and Sartor's testimony. As a result, we find that the trial court did not abuse its discretion by trying Etue in absentia.[3]

---

[3]To the extent that Etue's brief can also be fairly read to raise a multifarious complaint of the trial court's ruling against a competency examination, we find that it lacks any analysis. "It is incumbent upon Appellant to cite specific legal authority *and to provide legal arguments based upon that authority*." *Bohannan v. State*, 546 S.W.3d 166, 180 (Tex. Crim. App. 2017) (emphasis added). Because there is no analysis in the brief, it does not contain a clear and concise argument for the contention made and "is not enough to support reversal." *Id.* (citing *Bell v. State*,

## III. The Trial Court Did Not Abuse its Discretion by Excluding Evidence

In his second point, Etue argues that the trial court erred by excluding evidence that Falk had made an outcry against her uncle. Before Falk's cross-examination, Etue's counsel informed the trial court, outside of the jury's presence, that he intended to offer evidence that Falk had made a "false allegation of sexual assault" against her uncle. When asked what evidence he had to show that the allegation against Falk's uncle was false, Etue's counsel argued that

> law enforcement had both of these accusations. They were both fleshed out in the [Child Advocacy Center] interview, and law enforcement just chose to completely ignore the allegations against [Falk's uncle]. So we have the right . . . to tell the jury, law enforcement [did] not even believe her accusations about [Falk's uncle].

In response, the State argued, "It's not that that [allegation] was totally ignored in this case. . . . That [allegation] was in a totally different jurisdiction," and the State did not know the outcome of any investigation. The State also argued that Falk's allegation against someone else was irrelevant to this case. The trial court questioned Etue's counsel whether there was an investigation into the accusation against Falk's uncle and what that revealed, but Etue's counsel could not answer the trial court's questions, which prompted the trial court to allow Etue's counsel to make an offer of proof since he had not "put on any evidence whatsoever that the police [did not] believe [Falk]." That resulted in the following exchange:

> THE COURT: Well, you can cross examine that or bring up another witness, and you can ask another witness those questions. Do you want to call another witness?
>
> [DEFENSE COUNSEL]: Well, if I have to, I will. But I --

---

90 S.W.3d 301, 305 (Tex. Crim. App. 2002)); *see* TEX. R. APP. P. 38.1. Because "[w]e will not make novel legal arguments for [Etue]," we overrule his complaint. *Bohannan*, 546 S.W.3d at 180.

THE COURT: I don't know how you're going to do it otherwise.

[DEFENSE COUNSEL]: So --. But I think I can get into that with Sartor.

THE COURT: All right. If you want to take her on voir dire prior to the jury hearing anything about it, I'll let you talk to Sartor about that, too. But for right now, the Court's going to rule that you haven't produced any evidence that that other allegation, number one, is relevant to anything in this case; and number two, that anybody thinks that's a false allegation. Certainly, [Falk] has testified that it occurred. And she hasn't testified that it's a false allegation . . .

. . . .

THE COURT: . . . . I'm trying to give you an opportunity to put on whatever evidence you want to put on in order to try and make your point, but this isn't it.

Because Etue's counsel failed to bring forth any evidence that showed that the allegation against Falk's uncle was false, the trial court excluded the evidence until Etue's counsel could meet his burden.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g))). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if

10

it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

"The theory for admitting prior false accusations of rape in a sex-offense prosecution is frequently analogized to Aesop's story of '*The Boy Who Cried Wolf.*'" *Hammer v. State*, 296 S.W.3d 555, 564 (Tex. Crim. App. 2009) (emphasis added). "A past false accusation makes it more likely that the witness lacks credibility and thus should not be believed concerning this accusation." *Id.* "But in Aesop's fable, there really was a wolf, and it killed the sheep." *Id.* "The moral of that story was 'Nobody believes a liar . . . even when [s]he is telling the truth.'" *Id.* "A criminal trial, however, is designed to find the truth about a specific incident, not to decide whether someone has lied in the past about the presence of wolves or about being raped." *Id.* "Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense." *Id.*

Even so, if there is "evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules." *Id.* at 565. Yet, where, as here, there is no evidence that the prior accusation was false, a trial court does not abuse its discretion by excluding it. *See Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). In fact, the Texas Court of Criminal Appeals has stated that without proof of falsity, evidence of another outcry has little value in impeaching the credibility of a witness and poses a risk under Rule 403 of the Texas Rules of Evidence that the "evidence would unduly prejudice and confuse the jury." *Id.* at 226; *see* TEX. R. EVID. 403.

11

Here, Etue failed to make any predicate showing that Falk's allegation against her uncle was false. As a result, the allegation against her uncle had little probative value as to Etue's guilt or innocence, and its exclusion was supported by Rule 403. *See* TEX. R. EVID. 403. As in *Lopez*, we find no abuse of discretion in the trial court's decision to exclude the evidence. We overrule Etue's second point of error.

## IV.    Etue Was Not Harmed by His Counsel's Absence During Formal Sentencing

Due to Etue's voluntary absence, the punishment trial was also conducted without him. After closing arguments on punishment from both parties, the trial court announced its assessment of Etue's punishment. The trial court also said, "I've had discussions with counsel. Mr. Etue at this point is still, as far as I know, in the hospital. . . . Once we have Mr. Etue back in custody, we're going to order that a pronouncement hearing be held in Mr. Etue's presence, and that will be under Article 42.14" of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN art. 42.14.

On September 8, 2025, the trial court held a post-trial hearing to formally sentence Etue. Etue's counsel did not appear. The trial court noted for the record the following:

> [Defense counsel] was present on Friday, two weeks ago, when this trial in your case was finished. He sat through the trial. He performed his duty as a lawyer in the case, even though you had voluntarily absented yourself. We set a final sentencing hearing for today. [Defense counsel] indicated that he was going to be here when we set the hearing, and then he sent an email later to counsel for the [S]tate and to me indicating that he was not going to be here but he was going to have a lawyer stand in for you because all we're going to do today is I'm going to tell you what the sentence was from the . . . [trial court].

The trial court then repeated its previously assessed sentence in Etue's presence. In his last point of error, Etue argues that the trial court erred by sentencing him while his counsel was absent.

12

"The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to have counsel present at all critical stages of a criminal proceeding." *Simon v. State*, 554 S.W.3d 257, 266 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014)). "Sentencing is a critical stage in a criminal proceeding during which substantial rights may be affected, and a sentence cannot stand if a defendant is totally deprived of the assistance of counsel at sentencing." *Id.* (citing *Venegas v. State*, 560 S.W.3d 337, 357 (Tex. App.—San Antonio 2018, no pet.)).

"If a defendant shows that he was deprived of counsel during a critical stage of a criminal proceeding, the error is reviewed to determine whether it was harmful." *Id.* at 267 (citing *Carnell v. State*, 535 S.W.3d 569, 572 (Tex. App.—Houston [1st Dist.] 2017, order)). "If a defendant was deprived of counsel for all of the critical stage, then the deprivation is total and harm is presumed." *Id.* (citing *Carnell*, 535 S.W.3d at 572). "If a defendant was deprived of counsel for some but not all of the critical stage, then the deprivation was only partial and he must show harm." *Id.* (citing *Carnell*, 535 S.W.3d at 572). This is because "[a] partial deprivation of the right to counsel is subject to the 'harmless beyond reasonable doubt' standard." *Id.* (quoting *Cooks v. State*, 240 S.W.3d 906, 911–12 (Tex. Crim. App. 2007)).

Here, the record shows that Etue was represented by counsel at the time the trial court assessed the sentence against him in absentia. As a result, this shows a partial, rather than total, deprivation of counsel at the sentencing stage. *See id.*; *Venegas*, 560 S.W.3d at 356–57. As a result, Etue must show harm, but he does not address the issue of harm in his brief. In any event,

the record shows that the trial court's formal pronouncement "was in accordance with the assessment the trial court made when [Etue's] trial counsel represented him" during the assessment of his sentence. *Simon*, 554 S.W.3d at 267. Under such circumstances, we conclude that Etue was unharmed. *Simon*, 554 S.W.3d at 267; *Venegas*, 560 S.W.3d at 356–57 (finding that the defendant, whose punishment was tried in his absence, failed to show he was harmed when the sentence was assessed in counsel's presence and, even though counsel did not appear for formal sentencing, the sentence pronounced in the defendant's presence was the same sentence that the trial court had previously assessed in counsel's presence). Accordingly, we overrule Etue's last point of error.

## V.  Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     June 1, 2026
Date Decided:       June 26, 2026

Do Not Publish

14